# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5642 | **DATE** | 1/8/2003 |
| **CASE TITLE** | Kornfeld vs. Apfel | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court are cross motions for summary judgment by Plaintiff and Defendant brought pursuant to Fed. R. Civ. P 56. Plaintiff's motion for summary judgment is denied and Defendant's motion is granted. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 0 9 2003 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIA KORNFELD ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 5642 |
| v. ) | |
| ) | HONORABLE CHARLES R. NORGLE |
| ) | |
| KENNETY S. APFEL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

**Charles R. Norgle Sr., District Judge**

Before the court are cross motions for summary judgment by Plaintiff and Defendant. For the following reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion is granted.

## I. BACKGROUND

This case involves the judicial review of a claim denial for supplemental security income of Plaintiff, Maria Kornfeld (hereinafter "Kornfeld") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 and 1382. Larry Massanari (hereinafter, "Massanari") is now the Acting Commissioner of Social Security, and therefore the proper Defendant.

Kornfeld was born in 1959 in Honduras, were she received her education Kornfeld moved to the United States in 1989 and was employed in a lawyer's office for one and half years. Subsequently, Kornfeld held numerous jobs, which did not last long. Kornfeld applied for supplemental income ("SSI") on June 23, 1998 with the Social Security

Administration. On Kornfeld's initial application, she alleged that she was disabled due to severe depression that began in October 27, 1991. The Social Security Administration denied Kornfeld's initial application. Kornfeld filed a request for reconsideration in which she alleged an inability to work because of depression, and added, and severe back pain. The Social Security Administration reconsidered and again denied Kornfeld's application. On March 22, 1999, Kornfeld timely filed a request for a hearing on her disability determination. An Administrative Law Judge ("ALJ") held the hearing on June 7, 1999.

At the hearing, Kornfeld was represented by an attorney. Additionally, a Spanish interpreter and Dr. Stephanie L. Livingston, a medical expert, were present. At the hearing, Kornfeld amended the onset date of her alleged disability from October 27, 1991 to the application date, June 23, 1998, because she had worked on and off between 1991 and 1998. At the time of the hearing, Kornfeld had no income.

Regarding her mental impairment, Kornfeld testified that she had depression and attempted to commit suicide. Kornfeld testified, however, that because of medications and group therapy, her condition improved and that she felt much better than before. Kornfeld also testified that whenever she tried to work, she could not continue because of crying spells, sad feelings and difficulty in concentration. In other words, Kornfeld testified that her depression deteriorated especially when she tried to work and as a result, she frequently lost her jobs. Kornfeld described her daily life as including showering, watching TV, reading books, cleaning, cooking, shopping, and taking care of children.

Kornfeld submitted medical records prepared by several medical experts who treated Kornfeld between October 1995 and July 1999. The medical records established that

Kornfeld suffered from recurrent major depression. Kornfeld had been taking medicine such as Effexor and Depakote. The latest medical record showed that Kornfeld's depression was stabilized by the medication and Kornfeld remained asymptomatic. The same medical record also indicated that there was no evidence of depression or sadness and that Kornfeld denied crying spells, sleep problems or anxiety. Regarding Kornfeld's daily living, the medical records indicated that Kornfeld had an active and broad daily life.

In addition to the medical records, Dr. Livingston testified at the hearing indicating that Kornfeld did appear to have a severe impairment. However Dr. Livingston pointed out that there was no objective record to support Kornfeld's assertions that her depression intensified in the work setting..

Considering the hearing testimony, statements and the medical evidence, the ALJ concluded that Kornfeld was not disabled. Kornfeld appealed before the Appeals Council, which denied Kornfeld's request for review on August 18, 2000, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 416.1481. Kornfeld now seeks review in this court pursuant to 42 U.S.C. § 1383(c)(3).

## II. DISCUSSION

### A. Standard of Review

Cases involving the review of Social Security Administration decisions require the court to determine whether there is "substantial evidence" to support the decision of the Commissioner. See 42 U.S.C. §405 (g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edward v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

The ALJ must "build an accurate and logical bridge between the evidence and the result...." Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000). If substantial evidence does not support an ALJ's decision, the appropriate course of action is a remand and not an award of benefits unless all factual issues have been resolved. See Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

### B. Review of ALJ's Findings

Kornfeld alleged that she is disabled and is unable to work due to back pain and depression. Kornfeld now does not dispute the ALJ's finding that she has the exertional capacity to perform light work.

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairments(s) which can be expected to either result in death or last for a continuous period of not less than 12 months. See 42 U.S.C. § 1614(a)(3)(A). The Social Security Regulations require the ALJ to follow a five-step inquiry process to determine disability status. See 20 C.F.R. § 416.920(a)-(f). The following must be analyzed in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. Id. A claimant has the burden of proving steps one through four. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). Once the first four steps are satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. See Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

In determining Kornfeld's disability status, the ALJ first found that Kornfeld has not engaged in substantial gainful activities since 1989. (R. 20.) Additionally, the ALJ found that Kornfeld was severely impaired, based on recurrent major depression as well as abnormal alignment of the lumbar spine compatible with muscle spasm and early to mild degenerative disc disease. However, the ALJ found that Kornfeld's impairment did not meet or equal the level of severity or duration of an impairment listed by the Commissioner. Id. The ALJ also found that Kornfeld was "unable to perform her past relevant work as government secretary." (R. 21.) Finally, the ALJ found Kornfeld has the "residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting in excess of 20 pounds occasionally or 10 pounds frequently or performing more than unskilled work activities." Id. On this basis, the ALJ denied Kornfeld's claim for benefits.

Kornfeld contends that the ALJ erred in determining that Kornfeld's mental impairment did not significantly compromise her capacity for the full range of light work. Specifically, Kornfeld contends that: (1) the ALJ erred in his credibility determination; (2) the ALJ erred in failing to call upon a vocational expert; (3) the ALJ failed to discuss significant evidence favorable to her claim; and (4) the ALJ erred in making independent medical determinations and substituting them for those of medical experts and psychiatrists. The court addresses each argument in turn.

1.  **Credibility Determination**

The ALJ found that Kornfeld was not credible because there were many inconsistencies among Kornfeld's statements, records and testimony. In addition, the ALJ

found that Kornfeld's daily living was inconsistent with her statements of symptoms. Based on the credibility finding, the ALJ discounted Kornfeld's statements of symptoms.

Kornfeld contends that the ALJ's credibility determination is patently wrong because it was based on inconsistencies that did not exist in the record, and an unreasonable inference. Kornfeld also argues that the ALJ's credibility determination was insufficient because the ALJ failed to discuss the factors provided in 20 C.F.R. § 416.929 (c)(3) and SSR 96-7p. Massanari argues that the ALJ's credibility determination is not patently wrong because the record contained the inconsistencies indicated by the ALJ. Massanari also contends that the ALJ sufficiently considered factors listed in the Regulation and the Ruling. Kornfeld's argument has no merit.

The ALJ is in the best position to observe witnesses. Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1993). Therefore, the court normally will not "upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." Id. The court will uphold an ALJ's decision regarding a claimant's credibility if the decision contains "specific reasons for the finding on credibility, supported by the evidence in the case record, and [is] sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). "The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability." Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992). "The ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." Knight, 55 F.3d at 314. "The absence of objective medical evidence is just one factor to be

considered along with: (a) the claimant's daily activities; (b) the location, duration, frequency and intensity of pain; (c) precipitating and aggravating factors; (d) type, dosage, effectiveness and side effects of medication; (e) treatment other than medication; (f) any measures the claimant has used to relieve the pain or other symptoms; and (g) functional limitations and restrictions." Id.; see also SSR 96-7p; 20 C.F.R. § 404.929(c). However, "[a]n ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole." Knight, 55 F.3d at 314. "The discrepancy between the degree of pain attested by the [claimant] and that suggested by the medical evidence is probative that the [claimant] may be exaggerating her condition." Powers v. Apfel, 207 F.3d 431, 435-36 (7th Cir. 2000).

The ALJ first noted that Kornfeld's statements were inconsistent. (R. 21.) Specifically, the ALJ pointed out three inconsistencies: (1) Kornfeld's fluency in English; (2) the date Kornfeld came to the United States; and (3) whether Kornfeld attended high school. The record supports the ALJ's position on three points. First, Kornfeld was accompanied by a Spanish interpreter at the hearing, but she was capable of testifying in English. Dr. Yadede stated Kornfeld was bilingual, but Dr. Gil stated she could speak only Spanish. (R. 114, 117.) Second, Dr. Gil's report stated Kornfeld came to the United States in 1981, but Kornfeld testified she came to the United States in 1989. Finally, the record showed that in responding to the ALJ's question, "how far did you go to school?" Kornfeld answered she went to school for twelve years. The record showed that Kornfeld obtained a secretarial degree past high school, but Kornfeld did not answer clearly on this point.

In addition, the ALJ pointed out that Kornfeld had a very active daily life during the relevant time period, despite her claimed disability. Kornfeld admitted that she cooked,

7

cleaned, did laundry, went grocery shopping, walked, watched TV, took her children to the park, took public transportation, managed financial matters and took care of herself. (R. 114, 118, 122.) Kornfeld alleged that due to her mental impairment, she could not do any work at all, but her daily life appeared to have been almost unlimited. The ALJ reasonably considered in determining credibility that the apparent discrepancy between Kornfeld's allegation of symptoms and her active daily life was probative evidence that Kornfeld exaggerated her symptoms.

In this regard, Kornfeld argues that the ALJ should have explained specific inconsistencies between her daily living and her alleged limitations, citing to the case, Zurawski v. Halter, 245 F.3d at 887 as authority. Zurawski is distinguishable. In that case, the ALJ discredited a claimant's complaints of a disabling pain because of inconsistencies with the medical record and the daily activities. Id. In doing so, the ALJ did not provide any further explanation. The Seventh Circuit reversed and remanded the ALJ's decision. Kornfeld interprets Zurawski as mandating the ALJ to provide specific explanation whenever the ALJ considers the daily life as one of factors for credibility determination, and such interpretation is misleading. Zurawski recites the general proposition that the ALJ should provide specific explanation in her credibility determination, but does not hold that a claimant's daily life should be singled out as a special factor requiring specific explanation. Thus, Zurawski has little impact on this case.

Finally, the ALJ considered factors listed in 20 C.F.R. § 416.929 (c)(3) and SSR 96-7p. The ALJ considered Kornfeld's subjective complaints of symptoms including deterioration of her depression in the work setting. Because the medical evidence did not

8

substantiate Kornfeld's subjective complaints, the ALJ considered some of factors listed in 20 C.F.R. § 416.929 (c)(3) and SSR 96-7p. The ALJ considered Kornfeld's daily living; Kornfeld's depression was controlled by medications and she was stable and remained asymptomatic; Kornfeld was under effective medical therapy; Kornfeld complained of vague aches and pains rather than disabling pains; and Kornfeld's depressions imposed nothing worse than moderate functional restrictions. (R. 19-20.) The ALJ further noted that Kornfeld's bouts of depression were based on her financial and family concerns. The ALJ did not disregard Kornfeld's subjective complaints of pains. Rather, the ALJ considered and weighed, and properly discounted them.

The ALJ provided specific reasons in determining Kornfeld's credibility. The court upholds the ALJ's credibility determination because it is supported by specific reasons and relies upon substantial evidence found in the record.

### 2. Vocational Expert

Kornfeld contends that because her impairments significantly limited her employment opportunities, the ALJ should have called upon a vocational expert. Kornfeld contends the failure to call upon a vocational expert amounts to a failure to demonstrate that Kornfeld could do work within the national economy. Massanari contends that it was reasonable for the ALJ to find that he did not need a vocational expert, because substantial evidence supports the ALJ's finding that Kornfeld's depression did not impose any significant functional limitations.

The Medical-Vocational Guidelines, most commonly known as "Grid" (hereinafter, "Grid") are used to direct findings of "disabled" or "not disabled" based on the individual's

exertional category, age, education and previous work experience. 20 C.F.R. Part 404, Subpt. P, App. 2. The ALJ may use Grid as a framework when the claimant shows a combination of "exertional" and "non-exertional" limitations. 20 C.F.R. § 416.969a(d). If a claimant has non-exertional impairments and those impairments substantially reduce a range of work the claimant can do, it is not appropriate for the ALJ to use the Grid. Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994). The mere "fact that a claimant suffers from a non- exertional impairment does not, however, immediately preclude utilization of the [G]rid." Nelson v. Secretary of Health & Human Servs., 770 F.2d 682, 684-85 (7th Cir. 1985). It is up to the ALJ to determine "whether claimant's non-exertional impairments are severe enough to limit the abilities of the claimant substantially." Walker v. Bowen, 834 F.2d 635, 641 (7th Cir. 1987). In other words, the determination as to whether it is appropriate to use the Grid is a question of fact for the ALJ to decide. Id.

The court will uphold the ALJ's use of the Grid if there is "reliable evidence of some kind that would persuade a reasonable person that [claimant's] limitations do not significantly diminish the employment opportunities otherwise available" to the claimant. Warmoth v. Bowen, 798 F.2d 1109, 1112 (7th Cir. 1986). If the ALJ finds that a claimant lacks significant non-exertional limitations, and the ALJ's finding is supported by substantial evidence, it is not an error for the ALJ to rely on the Grid and not call upon the services of a vocational expert. See Binion v. Shalala, 13 F.3d 243, 248 (7th Cir. 1994); Howell v. Sullivan, 950 F.2d 343, 349 (7th Cir. 1991).

Kornfeld complained of severe back pain as well as the depression. See Johansen v. Barnhart, No. 02-2312, – F.3d –, 2002 U.S.App.Lexis 26453 (7th Cir. December 23, 2002)

(affirming the District Court's judgment upholding the denial of disability benefits for alleged back pain and depression). This demonstrated both exertional and non-exertional impairments. The ALJ could use the Grid as a framework when Kornfeld complained that she had a combination of exertional and non-exertional impairments. 20 C.F.R. § 416.969a(d).

The ALJ found that Kornfeld suffered from recurrent major depression. However, none of the medical records supported the conclusion that Kornfeld was disabled because of her depression. Rather, as the ALJ correctly pointed out, the latest medical record showed that Kornfeld's depression was controlled by medication and Kornfeld had been stabilized and was asymptomatic. (R. 123, 124.) The substantial evidence demonstrated that Kornfeld's depression was improving.

In addition, several medical experts opined that although Kornfeld had recurrent depression, she would be able to perform simple work. Dr. Yadede, who treated Kornfeld for about four years opined that Kornfeld would be able to perform simple activities. (R. 116). Dr. Cruz, who treated Kornfeld for three years, also stated that Kornfeld was "able to understand command and follow instruction and respond to supervision in appropriate language context." (R. 124.) Dr. Singh stated that Kornfeld was capable of performing simple and unskilled work. (R. 133.) Additionally, the medical records indicated that Kornfeld had a broad, active daily life, which included caring for herself and two children. (R. 114, 118, 122, 230).

The court concludes that there is reliable evidence sufficient to persuade a reasonable person that Kornfeld's limitations did not significantly diminish the

employment opportunities otherwise available to her. Therefore, it was not the error of the ALJ to use the Grid as a framework and not to call upon the vocation expert.

### 3. Failure to Discuss Significant Evidence Favoring Plaintiff's Claim.

Kornfeld contends that the ALJ ignored significant evidence that demonstrated her disability. Massanari contends that the ALJ is not required to discuss every single piece of evidence in the record. Kornfeld's argument is not persuasive.

The ALJ need not evaluate in writing every piece of evidence in the record. Garfield v. Schweiker, 732 F.2d 605, 609 (7th Cir. 1984). The ALJ is required to articulate his reasoning in a manner sufficient to allow meaningful review. See id. at 610. The court requires the ALJ to make specific findings when he rejects evidence that supports the claimant, only where such evidence went uncontradicted. Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985). Evidence is uncontradicted when the claimant presented considerable evidence to counter the agency's position. Burnett v. Bowen, 830 F.2d 731, 735 (7th Cir. 1987).

Kornfeld contends that the ALJ did not consider: (1) Kornfeld's suicidal attempts; (2) Dr. Yadede's report that Kornfeld would feel easily stressed under pressures; (3) Kornfeld's losing at least eight jobs for two years due to deterioration of Kornfeld's depressive symptoms in work settings; and (4) Dr. Gil's report that Kornfeld had neuro-vegetative symptoms of depression.

The ALJ considered and properly rejected the evidence pointed out by Kornfeld. First, the ALJ did not evaluate in writing Kornfeld's suicide attempts. However, at the

12

hearing, the ALJ questioned Kornfeld about her suicidal attempts and pointed out statement that Kornfeld did not want to commit suicide because of her children. (R. 221-2.) This court finds that the ALJ properly considered Kornfeld's suicide attempts in making his findings.

If Kornfeld had presented sufficient evidence to support her suicidal attempts, the ALJ should have made specific findings in rejecting the suicidal attempts. Kornfeld presented Dr. Gil's report as evidence showing Kornfeld's suicidal attempt and hospitalization in 1994 due to suicidal attempt. (R. 118.) The court finds that Dr. Yadede's report and Dr. Cruz's report contradicted Dr. Gil's report because those two reports indicated that Kornfeld was not hospitalized in 1994. (R. 114, 122.) Furthermore, the court finds that Dr. Gil's report indicated Kornfeld's two suicidal attempts in 1997 did not require any medical care. (R. 118.) The court finds that Dr. Gil's report is not sufficient to counter the ALJ's rejection of Kornfeld's suicidal attempts. The court finds that the ALJ did not err in failing to make a specific finding when rejecting Kornfeld's suicidal attempts.

Second, the ALJ considered Dr. Yadede's opinion on Kornfeld's stress handling problem, although the ALJ did not specifically identify Dr. Yadede's report. The ALJ stated that he found "no evidence that [Kornfeld] has ever decompensated from a work or work-like settings." (R. 20.) In this regard, Kornfeld contends that Dr. Yadede's opinion on Kornfeld's stress handling problem should be interpreted as Dr. Yadede's medical determination that Kornfeld's depression deteriorated in work settings. The court finds Kornfeld's assertions unpersuasive. Dr. Yadede's opinion did not reflect the development of Kornfeld's depression in specific work settings. It indicated that Kornfeld might be susceptible to stress. Furthermore, Dr. Yadede's opinion was based on Kornfeld's self-reporting rather than

13

objective assessment, such as a test score, as pointed out by Dr. Livingston at the hearing. The ALJ found Kornfeld's complaints of symptoms not credible. The ALJ did not err in rejecting Dr. Yadede's report. Dr. Yadede's opinion on Kornfeld's ability to handle stress does not demonstrate a deterioration of Kornfeld's depression in work settings.

Third, regarding frequent loss of jobs, Kornfeld failed to present any objective evidence. There was no evidence to show Kornfeld's loss of jobs, except Kornfeld's own self-serving statements, which the ALJ considered and discounted properly.

Fourth, regarding Dr. Gil's medical opinion, the ALJ discussed Dr. Gil's diagnosis in writing that "the psychological evaluation of October 6, 1999 resulted in a diagnosis of major depression." (R. 19.)

The court finds that Kornfeld failed to present sufficient evidence to mandate the ALJ articulate all his reasoning for rejecting the evidence that she presented in favor of her claim and that the ALJ did not err in rejecting Kornfeld's evidence.

### 4. The ALJ's Independent Medical Determination and Substitution of His Opinion for Those of Medical Experts and Psychiatrist

Kornfeld contends that the ALJ rejected Dr. Livingston's opinion that Kornfeld's depression would deteriorate in work settings. Additionally, Kornfeld contends that the ALJ substituted his determination for that of a medical expert by stating that Kornfeld's depression was due to lack of motivation or her responsibilities at home. Massanari argues that Kornfeld is attempting to mislead the court by her depiction of Dr. Livingston's analysis. Massanari also argues that the ALJ made neither an independent medical determination nor

substituted it's own determinations for those of medical experts. The court finds Massanari's argument persuasive.

The ALJ's decision "must be based on testimony and medical evidence in the record, and the [ALJ] cannot make his own independent medical determination about the claimant'" Scivally, 966 F.2d at 1076. In other words, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). However, "the ALJ is allowed to weigh and consider evidence and make credibility judgments about evidence." Stuckey v. Sullivan, 881 F.2d 506, 509 (7th Cir. 1989). If there is a basis for adjudging evidence incredible, the ALJ can substitute [his] own judgment to reject that evidence. See Mitchell v. Office of Workers Compensation Programs, 25 F.3d 500, 508 (7th Cir. 1994).

Kornfeld misinterprets the record by contending that Dr. Livingston opined that Kornfeld's depression deteriorated in work settings and that the ALJ rejected that opinion. Dr. Livingston testified under the assumption that Kornfeld was completely credible, which the ALJ found otherwise. In addition, Dr. Livingston testified that no objective evidence supported Kornfeld's deterioration of depression in work settings and that Dr. Yadede's report on Kornfeld's stress handling problem was a mere repetition of Kornfeld's subjective complaints. (R. 242, 243.)

The medical evidence and not the ALJ's independent opinion, supported the ALJ's medical determination that Kornfeld's depression was based on lack of motivation or responsibilities at home. Dr. Cruz's report indicated that Kornfeld had depression because of lack of motivation and family issues. (R. 122.) The medical record from Greater Lawn

Mental Health Center showed that Kornfeld expressed family and financial worries during the treatment. (R. 96, 97.)

Thus, the court finds that the ALJ neither made any independent determination nor substituted it's own determination for the determinations of the medical experts.

### III.CONCLUSION

For the foregoing reasons, the court finds that sufficient evidence supports the ALJ's finding that Kornfeld's mental impairment did not significantly compromise her capacity for the full range of light work. The ALJ's decision is supported by substantial evidence, therefore, Plaintiff's motion for summary judgment is denied and Defendant's motion is granted. The decision of the Social Security Commissioner is affirmed.

IT IS SO ORDERED

ENTER

CHARLES RONALD NORGLE SR., Judge
United States District Court

DATED: 1/7/03